**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| CARLOS ANTHONY HAWTHORNE,<br><br>        Petitioner,<br><br>    v.<br><br>PAT HORN,[1]<br><br>        Respondent. | Case No. CV 22-7535-FWS (AS)<br><br>**REPORT AND RECOMMENDATION OF A**<br><br>**UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable Fred W. Slaughter, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**INTRODUCTION**

On October 17, 2022, Carlos Anthony Hawthorne ("Petitioner"), a California state prisoner represented by counsel,

---

[1] Pat Horn, the Acting Warden at California State Prison – Los Angeles County, in Lancaster, California, where Petitioner is currently incarcerated, is substituted for former Warden Raybon Johnson as the proper Respondent. (See Dkt. No. 16 at 1 n.1).

filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition"), challenging Petitioner's conviction and sentence in Los Angeles County Superior Court case number BA137272 on fourteen different grounds. (Dkt. No. 1).

On March 10, 2023, Respondent filed a Motion to Dismiss the Petition ("Motion to Dismiss") with an accompanying memorandum of points and authorities ("MTD Mem."), contending that dismissal is warranted for failure to exhaust the Petition's Grounds Eleven, Twelve, and Thirteen and part of Ground Fourteen. (Dkt. No. 16). Respondent also lodged documents from Petitioner's state proceedings ("Lodgment(s)"). (Dkt. No. 17).

On June 12, 2023, Petitioner filed an opposition to the motion to dismiss and a motion for stay and abeyance ("Motion for Stay") pursuant to Rhines v. Weber, 544 U.S. 269 (2005). (Dkt. No. 21). On June 26, 2023, Respondent filed an Opposition to the Motion for Stay, along with supplemental lodgments, including a six-volume Clerk's Transcript ("CT") and ten-volume Reporter's Transcript ("RT") from Petitioner's state trial court proceedings. (Dkt. Nos. 23-24). On July 5, 2023, Petitioner filed a Reply. (Dkt. No. 25).

For the reasons stated below, it is recommended that (1) the Motion to Dismiss be granted to the extent it seeks dismissal of the Petition's unexhausted claims; (2) the Motion for Stay be denied; and (3) Grounds Eleven, Twelve, and Thirteen and part of

2

Ground Fourteen be dismissed without prejudice for lack of exhaustion.

**PROCEDURAL HISTORY**

On July 25, 1997, a Los Angeles County Superior Court jury found Petitioner guilty of the first-degree murder of Vanessa Sells (California Penal Code ("P.C.") § 187(a)), the attempted murder of Kristian F. (P.C. §§ 187, 664), the first-degree robbery of both Sells and Kristian (P.C. § 211), and first-degree residential burglary (P.C. § 459). (Lodgment 1 at 1; 6 CT 1651-55, 1664-66). The jury also found true special circumstance allegations of robbery murder (P.C. § 190.2(a)(17)(A)) and burglary murder (P.C. § 190(a)(17)(G)). (Lodgment 1 at 1; 6 CT 1651-55, 1664-66). After a penalty trial, on August 12, 1997, the jury returned a verdict of death, and the trial court imposed that sentence. (Lodgment 1 at 1; 6 CT 1702, 1705, 1743-48).

On April 23, 2009, the California Supreme Court affirmed the judgment. (Lodgment 1 at 46). On May 1, 2009, Petitioner filed a petition for rehearing. (Lodgment 2). On June 24, 2009, rehearing was denied. (See Lodgment 3 at 7). Petitioner then filed a petition for writ of certiorari in the United States Supreme Court, which was denied on October 5, 2009. (Lodgment 4).

On October 7, 2009, Petitioner filed a habeas corpus petition in the California Supreme Court, in case number S176951, followed

by an amended petition on April 22, 2013. (Lodgment 5). On May 16, 2018, the court issued an order to show cause, returnable in the Los Angeles County Superior Court for the adjudication of one claim, whether Petitioner's trial counsel provided ineffective assistance at the penalty phase (Claim Four). (Lodgment 6). The court denied on the merits all remaining claims, while also finding that Claims Two, Six and Eight (except to the extent they alleged ineffective assistance of counsel) were procedurally barred under In re Waltreus, 62 Cal. 2d 218, 225 (1965), to the extent they were raised and rejected on appeal; that Claim Eight (except to the extent it alleged ineffective assistance of counsel) was procedurally barred under In re Dixon, 41 Cal. 2d 756, 759 (1953), to the extent it could have been raised on appeal but was not; and that Claim Nine (except to the extent it alleged ineffective assistance of counsel) was procedurally barred under In re Seaton, 34 Cal. 4th 193, 201 (2004), to the extent it could have been raised in the trial court but was not. (Lodgment 6).

On October 15, 2021, the Los Angeles County District Attorney's Office filed a Declination to Show Cause as to Claim Four in the Los Angeles County Superior Court. (See Lodgment 7 at 45). The District Attorney's Office and Petitioner's attorneys subsequently agreed to a disposition in which Petitioner would be resentenced to life without the possibility of parole. On November 21, 2021, the petition was granted, and Petitioner was resentenced to life in state prison without the possibility of parole.

(Lodgment 7 at 48; see Petition at 300-304).[2] The instant Petition followed on October 17, 2022.

**PETITIONER'S CLAIMS**

The Petition raises the following fourteen grounds for federal habeas relief:

Ground One:     Petitioner was prosecuted, convicted, and sentenced while mentally incompetent to stand trial. (Petition at 52-101).

Ground Two:     The prosecution's reliance on Petitioner's illegally obtained, unreliable, and involuntary statement violated his constitutional rights. (Petition at 101-144).

Ground Three:   Petitioner received ineffective assistance of counsel during the guilt/innocence phase of his trial. (Petition at 144-88).

Ground Four:    Petitioner received ineffective assistance of counsel based on his trial counsel's conflicting interests. (Petition at 188-97).

---

[2] Citations to the Petition utilize the page numbers provided by the Court's electronic docket.

5

Ground Five:       The prosecutor's pervasive pattern of prejudicial misconduct violated Petitioner's constitutional rights. (Petition at 197-208).

Ground Six:        Juror misconduct deprived Petitioner of his right to be tried by an impartial jury. (Petition at 208-32).

Ground Seven:      The prosecutor unlawfully exercised peremptory challenges based on the racial and ethnic characteristics of potential jurors. (Petition at 232-55).

Ground Eight:      The trial court improperly excused potential jurors for cause based on their equivocal responses regarding the death penalty. (Petition at 255-72).

Ground Nine:       The trial court violated Petitioner's constitutional rights by instructing the jury on the uncharged crime of first-degree felony murder even though Petitioner was only charged with second-degree malice murder. (Petition at 272-78).

Ground Ten:        The trial court violated Petitioner's constitutional rights by failing to require the

6

jury to agree unanimously on whether Petitioner
had committed a premeditated murder or a felony
murder before finding him guilty of first-degree
murder. (Petition at 278-85).

Ground Eleven:    The trial court's use of outdated and erroneous
jury instructions violated Petitioner's due
process rights. (Petition at 285-88).

Ground Twelve:    The trial court's failure to instruct the jury on
the "one continuous transaction" rule in felony
murder cases violated Petitioner's rights to a
fair trial. (Petition at 288-90).

Ground Thirteen:  The imposition of higher restitution would
violate the California Constitution. (Petition at
290-91).

Ground Fourteen:  There was cumulative error. (Petition at 291-95).

**DISCUSSION**

Respondent seeks dismissal due to Petitioner's failure to
exhaust in state court Grounds Eleven, Twelve, and Thirteen and
part of Ground Fourteen. (MTD Mem. at 4-8). Petitioner acknowledges
that these claims are unexhausted, and he seeks a stay and abeyance
under Rhines to allow him to exhaust these claims. (Motion for Stay

7

at 5, 9-19). Alternatively, in the event the Court finds a _Rhines_ stay unwarranted, Petitioner asks that his unexhausted claims be dismissed and the case proceed on the remaining claims in the Petition. (Motion for Stay at 19). Respondent contends that a _Rhines_ stay is unwarranted here because Petitioner fails to demonstrate good cause and his unexhausted claims are plainly meritless. (Opp. to Stay at 3-17).

For the reasons explained below, Petitioner has failed to demonstrate good cause for a _Rhines_ stay. Respondent's Motion to Dismiss should therefore be granted; Petitioner's Motion for Stay should be denied; and the Petition's unexhausted claims – Grounds Eleven, Twelve, and Thirteen and part of Ground Fourteen (to the extent the cumulative-error claim is predicated on the errors alleged in Grounds Eleven, Twelve, and Thirteen) – should be dismissed.

**A.    Applicable Law**

A state prisoner must exhaust his state court remedies before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement, a habeas petitioner must "fairly present" his federal claims in the state courts to give the state the opportunity to pass upon and correct alleged violations of the petitioner's federal rights. Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam). A petitioner must present

his claims to the highest court with jurisdiction to consider them (typically the state supreme court) or demonstrate that no state remedy is available. See Peterson v. Lampert, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc).

In Rhines, the Supreme Court held that the federal courts have the discretion to "stay and abey[]" a federal habeas corpus petition while a prisoner exhausts state remedies, but only in "limited circumstances." Rhines, 544 U.S. at 277. Specifically, the Court held that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. In addition, for a stay to be appropriate, the district court must determine that at least one of the petitioner's unexhausted claims is not "plainly meritless" and that the petitioner has not engaged in dilatory tactics. Id. at 277-78; Dixon v. Baker, 847 F.3d 714, 722 (9th Cir. 2017). A claim is "plainly meritless" if "it is perfectly clear that the petitioner has no hope of prevailing." Dixon, 847 F.3d at 722 (quoting Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005)). If the petitioner had good cause for his failure to exhaust, has potentially meritorious claims, and has not engaged in abusive litigation tactics, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition." Rhines, 544 U.S. at 278.

**B.**   **Analysis**

Petitioner argues that his failure to exhaust Grounds Eleven and Twelve and part of Ground Fourteen was due to ineffective assistance of appellate and habeas counsel,[3] while his failure to exhaust Ground Thirteen was due to his lack of counsel after resentencing, when the basis for the claim arose. (See Motion for Stay at 11-15; Petition at 43, 285 n.13). Petitioner contends that his post-conviction counsel was deficient by failing to raise Grounds Eleven and Twelve and part of Ground Fourteen because these "are purely legal claims and are fully consistent with the claims that were presented in the California Supreme Court." (Motion for Stay at 12).

For the reasons explained below, Petitioner fails to demonstrate sufficient basis for a stay under Rhines, at least because his unexhausted claims are all plainly meritless.[4] See Rhines, 544 U.S. at 277 ("[E]ven if a petitioner had good cause for th[e] failure [to exhaust], the district court would abuse its

---

[3] "[T]he good cause standard is satisfied when a petitioner lacked the effective assistance of counsel during state postconviction review proceedings." Cage v. Montgomery, 812 F. App'x 679, 680 (9th Cir. 2020) (citing Dixon, 847 F.3d at 720-22; Blake v. Baker, 745 F.3d 977, 982-84 (9th Cir. 2014)).

[4] In addition, because the unexhausted claims are meritless, Petitioner fails to demonstrate good cause under Rhines based on the ineffective assistance of post-conviction counsel, as counsel was not ineffective by failing to raise meritless claims. See Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance [of counsel].").

discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").

### 1.   Ground Eleven Is Plainly Meritless

In Ground Eleven, Petitioner claims the trial court violated his due process rights by using the "outdated and 'impenetrable' CALJIC instructions in effect at the time of [Petitioner's] trial" despite the trial court's own acknowledgement that such instructions were unclear. (Petition at 287). Petitioner contends that the resulting jury instructions violated due process because they did not adequately inform the jury that the prosecution must prove every element of the charged crimes beyond a reasonable doubt. (Petition at 287-88).

Petitioner notably does not point to any particular instruction that was deficient, confusing, or misleading. Instead, his argument rests mainly on the fact that the CALJIC jury instructions used at his trial were effectively replaced several years later by a new set of instructions, CALCRIM, meant to be clearer for the average juror. (Petition at 285-86). At Petitioner's trial, the judge alluded to this in her instructions to the jury, as follows:

> [T]here is a committee who is working very hard. In fact
> they have been working for a couple years on trying to
> turn these instructions into English and they are

11

fighting so hard on every comma and period that they haven't gone anywhere. [¶] So to the extent that some of these [instructions] may not seem like English to you, please be assured that when the attorneys have a chance to argue, they'll have a chance to direct and focus your attention, [and] hopefully make [the instructions] more logical or reasonable.

(5 RT 877-78). Petitioner contends that his trial counsel, "despite this prompting from the court, did nothing to ensure that the jury understood that it must find 'every element' beyond a reasonable doubt." (Motion for Stay at 16). However, Petitioner has offered no basis whatsoever to show that the jury instructions were insufficiently clear or unconstitutional in any respect.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." Middleton v. McNeil, 541 U.S. 433, 437 (2004) (citing Sandstrom v. Montana, 442 U.S. 510, 520-21 (1979)). Yet, "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt . . . the Constitution does not require that any particular forms of words be used in advising the jury of the government's burden of proof." Victor v. Nebraska, 511 U.S. 1, 5 (1994) (citations omitted). Moreover, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is 'whether the

ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" Middleton, 541 U.S. at 437 (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).

Here, the trial court instructed the jury on the presumption of innocence and the prosecution's burden of proving him guilty beyond a reasonable doubt. The court did so, in part, by giving CALJIC 2.90, as follows:

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt. [¶] Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything related to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

(6 CT 1628-29; 5 RT 892-93). The trial court also read CALJIC 2.01, which provides in part:

[E]ach fact which is essential to complete a set of
circumstances necessary to establish the defendant's
guilt must be proved beyond a reasonable doubt. In other
words, before an inference essential to establish guilt
may be found to have been proved beyond a reasonable
doubt, each fact or circumstance on which the inference
necessarily rests must be proved beyond a reasonable
doubt.

(6 CT 1624; 5 RT 883-84). In addition, among various other
instructions, the court advised the jury that "each fact which is
essential to complete a set of circumstances necessary to establish
the truth of a special circumstance must be proved beyond a
reasonable doubt" (6 CT 1634; 5 RT 905); and that "[i]n deciding
whether or not to testify, [Petitioner] may choose to rely on the
state of the evidence and upon the failure, if any, of the People
to prove beyond a reasonable doubt every essential element of the
charge against him." (6 CT at 1627; 5 RT 890) (emphasis added).

Courts in this Circuit generally have denied due process
challenges to these same instructions because they adequately
advise the jury of the applicable burden of proof. See Lisenbee v.
Henry, 166 F.3d 997, 999-1000 (9th Cir. 1999) (holding that CALJIC
2.90 adequately described the reasonable doubt standard); Stovall
v. Tilton, 2011 WL 2939423, at *19-20 (C.D. Cal. June 10, 2011)
(by giving CALJIC 2.90 and 2.01 and by instructing jury that
prosecution must prove each element of the murder charge, trial

court sufficiently informed the jury that the prosecutor was required to prove the charges, and all elements, beyond a reasonable doubt), report and recommendation adopted, 2011 WL 2939420 (C.D. Cal. July 19, 2011); Tran v. Hernandez, 2009 WL 453108, at *8 (C.D. Cal. Feb. 23, 2009) (by giving the instructions in CALJIC 2.90 as well as CALJIC 2.01, "the trial court clearly instructed the jury that it must find each fact necessary to prove petitioner's guilt beyond a reasonable doubt."); Jerro v. Scribner, 2009 WL 1217536, at *9-10 (C.D. Cal. Apr. 30, 2009) (rejecting as meritless petitioner's claim that CALJIC 2.90 did not inform the jury that it must find petitioner guilty beyond a reasonable doubt as to each element of the offense charged); see also Victor, 511 U.S. at 16-17 (holding that an earlier version of CALJIC 2.90 did not "suggest[] a standard of proof lower than due process requires or . . . allow[] conviction on factors other than the government's proof");[5] Drayden v. White, 232 F.3d 704, 715 (9th Cir. 2000) (denying habeas claim of ineffective assistance of counsel predicated on counsel's failure to object to CALJIC 2.90 because the instruction had been found legally sufficient in Victor).

---

[5] Victor mainly concerned the phrase "moral certainty" as used in an earlier version of CALJIC 2.90. See Victor, 511 U.S. at 12-17. Although the Supreme Court held that this phrase did not render the instruction unconstitutional, the Court did express disapproval of the phrase. Victor, 511 U.S. at 16-17. In response, California subsequently omitted the phrase from the instruction. See People v. Freeman, 8 Cal. 4th 450, 504 (1994); People v. Stone, 160 Cal. App. 4th 323, 333 (2008). The revised, post-1994 version was used in Petitioner's trial.

The mere fact that the instructions were later redrafted and improved – indeed, several years after Petitioner's trial – does not mean they were insufficient or unconstitutional, and Petitioner has not demonstrated otherwise. Moreover, Petitioner cannot show that any instructional error "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72. There is nothing in the record to suggest that the jury was misled as to its obligation to find each element of the charged crimes by proof beyond a reasonable doubt, nor that the jury otherwise misunderstood such obligation. Ground Eleven of the Petition is therefore plainly meritless.

## 2.   Ground Twelve Is Plainly Meritless

Ground Twelve asserts that the trial court's failure to instruct the jury on the "one continuous transaction" rule in felony murder cases violated Petitioner's rights to a fair trial. (Petition at 288-90). As Petitioner points out, the jury convicted him of first-degree murder after being instructed on both a felony-murder theory and premeditated and deliberate murder.[6] (5 RT 898-901). The trial court instructed the jury on felony murder in part as follows:

> Every person who unlawfully kills a human
> being . . . during the commission or attempted

---

[6] The jury also found true special circumstances of burglary and robbery. (6 CT 1665-68; 6 RT 968).

16

commission of Robbery and/or Residential Burglary, is guilty of the crime of murder in violation of Penal Code Section 187. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A human being was killed; [¶] 2. The killing was unlawful; and [¶] 3. The killing was done with malice aforethought or occurred during the commission or attempted commission of the felony of Robbery or the felony of Residential Burglary.

. . .

For the purposes of determining whether an unlawful killing has occurred during the commission or attempted commission of a residential burglary, the commission of the crime of burglary is not confined to a fixed place or a limited period of time. [¶] A residential burglary is in progress after the original entry while the perpetrator is fleeing in attempt to escape. Likewise, it is still in progress so long as immediate pursuers are attempting to capture the perpetrator to . . . regain stolen property. [¶] A residential burglary is complete when the perpetrator has eluded any pursuers and reached a place of temporary safety and is in unchallenged possession of stolen property after having effected an escape with such property.

1 (6 CT 1630, 1632; 5 RT 896, 900).

2

3    Petitioner fails to demonstrate any error in these
4 instructions. While it is true that, as Petitioner points out, the
5 California Supreme Court has invoked the "one continuous
6 transaction" analysis as a standard for the sufficiency of evidence
7 to support a felony-murder instruction or conviction, see People
8 v. Sakarias, 22 Cal. 4th 596, 624 (2000), there no requirement that
9 the killing and the felony be part of one continuous transaction.
10 See Lopez v. Stainer, 494 F. App'x 778, 779 (9th Cir. 2012)
11 ("[U]nder California law,] that a felony and homicide are 'one
12 continuous transaction' is a sufficient condition to satisfy the
13 statutory requirement [that the murder be committed 'in
14 perpetration of' the underlying felony] but not a necessary one."
15 (emphasis added)); Khan v. Lopez, 2013 WL 4013630, at *9 (N.D. Cal.
16 Aug. 5, 2013) ("[U]nder California law, the 'one continuous
17 transaction' analysis does not establish an element of the
18 offense[;] rather, it is used as an appellate standard of review
19 to determine whether there was sufficient evidence to support an
20 instruction or a conviction on felony-murder. While evidence of a
21 single continuous transaction may be sufficient to justify an
22 instruction or conviction on felony murder, it is the jury's role
23 to determine whether a murder was committed in the perpetration of
24 the underlying felony, not whether the murder took place as part
25 of a single continuous transaction." (citing Sakarias, 22 Cal. 4th
26 at 624)). As such, there is certainly no requirement to include
27 the "one continuous transaction" rule in the felony murder

28
                                  18

instructions to the jury.[7] See, e.g., Lopez v. Stainer, 494 F. App'x at 779 (rejecting instructional error claim because California does not require instruction on "one continuous transaction" rule for felony murder conviction); Khan, 2013 WL 4013630, at *9 (same). Thus, Ground Twelve of the Petition is plainly meritless.

---

[7] In addition, even if California did require this, a mere violation of state law would not entitle Petitioner to federal habeas relief. See Gilmore v. Taylor, 508 U.S. 333, 342 (1993) ("[I]nstructions that contain errors of state law may not form the basis for federal habeas relief."); Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988) (instructional error "does not alone raise a ground cognizable in a federal habeas corpus proceeding"); Lewis v. Runnels, 2009 WL 5195965, at *6 (E.D. Cal. Dec. 21, 2009) ("This state law question of whether the trial court violated California caselaw when it gave an 'escape rule' jury instruction, as opposed to an instruction on 'one continuous transaction,' is not cognizable in this federal habeas corpus proceeding." (citing Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991))), aff'd, 472 F. App'x 778 (9th Cir. 2012); see also Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[Petitioner] may not, however, transform a state-law issue into a federal one merely by asserting a violation of due process."). "Petitioner has not cited any United States Supreme Court case holding that, for purposes of due process and the felony-murder rule, a jury instruction must inform the jury that a homicide is committed in the perpetration of a felony only if the killing and the felony are part of one continuous transaction." Lewis, 2009 WL 5195965, at *7. Claims which effectively raise only state law issues are plainly meritless under the Rhines test. See Avila v. Kirkland, 249 F. App'x 695, 696 (9th Cir. 2007) (claim challenging a "state law determination" on a jury instruction failed "to present a federal constitutional question" and was therefore meritless under Rhines); Gordon v. Montgomery, 2023 WL 2629028, at *4 (C.D. Cal. Feb. 8, 2023) ("Federal courts repeatedly have concluded that claims that are not cognizable on federal habeas review, particularly claims that raise only state law concerns, are plainly meritless under the Rhines test." (citations omitted)), report and recommendation adopted, 2023 WL 2749136 (C.D. Cal. Mar. 30, 2023).

1        **3.   Ground Thirteen Is Plainly Meritless**

2

3        In Ground Thirteen, Petitioner claims that the trial court

4   violated the California Constitution by imposing additional

5   restitution when resentencing him, despite that he already had paid

6   the restitution fine that was originally assessed. (Petition at

7   290-91). Because this claim does not "attack[] . . . the legality

8   or duration of [Petitioner's] confinement[,]" Crawford v. Bell,

9   599 F.2d 890, 891 (9th Cir. 1979),[8] it is not cognizable in this

10  federal habeas action. See Bailey v. Hill, 599 F.3d 976, 984 (9th

11  Cir. 2010) (§ 2254 "does not confer jurisdiction over a habeas

12  corpus petition raising an in-custody challenge to a restitution

13  order."); Messer v. Montgomery, 2023 WL 2277544, at *16 (E.D. Cal.

14  Feb. 28, 2023) (pursuant to Baily, dismissing individual habeas

15  claim challenging restitution fine), report and recommendation

16  adopted, 2023 WL 3168352 (E.D. Cal. Apr. 28, 2023); Ruffin v.

17  Gastelo, 2021 WL 6845544, at *22 (C.D. Cal. Dec. 8, 2021) (same),

18  report and recommendation adopted, 2022 WL 393193 (C.D. Cal. Feb.

19  9, 2022); Galvan v. Adams, 2010 WL 2606254, at *8 (E.D. Cal. June

20  28, 2010) (same). As such, Ground Thirteen is plainly meritless.

21  See Adams v. Paramo, 2016 WL 11518348, at *6 (C.D. Cal. Jan. 20,

22  2016) ("An example of a 'plainly meritless' claim is one that is

23  not even cognizable under Section 2254." (citations omitted)).

24

25  ────────────

26      [8] "[T]he essence of habeas corpus is an attack by a person in
    custody upon the legality of that custody, and . . . the
27  traditional function of the writ is to secure release from illegal
    custody[.]" Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

28

**4.    The Unexhausted Portion of Ground Fourteen Is Plainly
Meritless**

As noted above, Ground Fourteen asserts cumulative error (<u>see</u>
Petition at 291-95) and is unexhausted only to the extent it is
predicated on the errors alleged in Grounds Eleven, Twelve, and
Thirteen. Because such claims lack merit for the reasons explained
above, Ground Fourteen is also plainly meritless to the extent it
is predicated on the errors in such claims.

**5.    Petitioner's Unexhausted Claims Should Be Dismissed**

Because Grounds Eleven, Twelve, and Thirteen and the
unexhausted part of Ground Fourteen are plainly meritless, a <u>Rhines</u>
stay is not warranted to exhaust such claims. As such, the Petition
is subject to dismissal as a mixed petition containing both
unexhausted and exhausted claims. <u>See</u> <u>Rose v. Lundy</u>, 455 U.S. 509,
522 (1982) ("[A] district court must dismiss habeas petitions
containing both unexhausted and exhausted claims."). Yet, the Court
"may not dismiss a mixed petition without giving the petitioner
the opportunity to delete the unexhausted claims." <u>Dixon</u>, 847 F.3d
at 719 (quoting <u>Valerio v. Crawford</u>, 306 F.3d 742, 770 (9th Cir.
2002)). Here, as noted above, Petitioner requests that the Court
dismiss the unexhausted claims, if a <u>Rhines</u> stay is denied, so that
Petitioner may proceed solely on the exhausted claims in the
Petition (*i.e.*, Grounds One through Ten and the remaining portion
of Ground Fourteen). (<u>See</u> Motion for Stay at 19). Accordingly, as

Petitioner has failed to demonstrate sufficient grounds for a Rhines stay, his unexhausted claims – Grounds Eleven, Twelve, and Thirteen and part of Ground Fourteen (to the extent the claim is predicated on the errors alleged in Grounds Eleven, Twelve, and Thirteen) – should be dismissed.[9]

## RECOMMENDATION

For the reasons discussed above, it is recommended that the district court issue an Order: (1) accepting this Report and Recommendation; (2) granting Respondent's Motion to Dismiss (Dkt. No. 16) to the extent it seeks dismissal of the Petition's unexhausted claims; (3) denying Petitioner's Motion for Stay (Dkt. No. 21); and (4) dismissing without prejudice Grounds Eleven, Twelve, and Thirteen and part of Ground Fourteen (to the extent

---

[9] Petitioner has not requested a stay under the alternative procedure set forth in Kelly v. Small, 315 F.3d 1063 (9th Cir. 2002), overruled on other grounds by Robbins v. Carey, 481 F.3d 1143 (9th Cir. 2007). Regardless, a stay under Kelly would likely be inappropriate here for the same reason addressed above, that Petition's unexhausted claims are meritless. See Kelly, 315 F.3d at 1070 (a stay is appropriate "when valid claims would otherwise be forfeited" (emphasis added)); see also Carter v. Broomfield, 2022 WL 18276326, at *1 (C.D. Cal. Dec. 7, 2022) ("[U]nder both Rhines and Kelly, a stay is not appropriate where it would be futile because, for example, the unexhausted claims are plainly meritless."), report and recommendation adopted, 2023 WL 172012 (C.D. Cal. Jan. 12, 2023); Montes v. Frauenhiem, 2020 WL 2139334, at *2 (C.D. Cal. Feb. 26, 2020) (same).

the claim is predicated on the errors alleged in Grounds Eleven, Twelve, and Thirteen) for failure to exhaust state court remedies.

DATED: September 15, 2023

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.